# EXHIBIT A

# SUPER LAW GROUP, LLC

June 2, 2022

**Via Certified Mail, Return Receipt Requested**

Gentile Construction Corp.
210 Hillside Place
Eastchester, NY 10709

Gentile Construction Corp.
451 Old Nepperhan Avenue
Yonkers, NY 10701

Joseph Gentile Jr.
9 Barnard, Rd
Armonk, NY 10504

All About Recycling, Inc.
C/O Joseph Gentile Sr.
16 Normandy Road
Yonkers, NY 10701

      Re:    <u>Notice of Violation and Intent to File Suit under the Clean Water Act</u>

To Whom It May Concern,

      We are writing on behalf of Riverkeeper, Inc. ("Riverkeeper"),[1] to notify you of Riverkeeper's intent to file suit against Gentile Construction Corp., All About Recycling, Inc., and Joseph Gentile Jr. (collectively, "Gentile Construction") pursuant to Section 505(a) of the federal Clean Water Act ("CWA")[2] for violations of the CWA.

      Riverkeeper intends to file suit, as an organization and on behalf of its adversely affected members, in the United States District Court for the Southern District of New York seeking appropriate equitable relief, civil penalties, and other relief no earlier than 60 days from the postmark date of this letter.[3]

---

[1] Riverkeeper, Inc. is a not-for-profit environmental organization existing under the laws of the state of New York, headquartered in Ossining, New York. Riverkeeper's mission includes safeguarding the environmental, recreational, and commercial integrity of the Hudson River and its ecosystem, as well as the watersheds that provide New York City with its drinking water. Riverkeeper achieves its mission through public education, advocacy for sound public policies, and participation in legal and administrative forums. Riverkeeper has more than 3,800 members, many of whom reside near to, use, and enjoy the Hudson River and the waters and tributaries of the Hudson River and New York Harbor, including the Saw Mill River—waters that are polluted by industrial stormwater runoff.
[2] 33 U.S.C. § 1365(a). We refer to statutory provisions by their section in the Clean Water Act and provide the parallel citation to the United States Code only on first reference.
[3] *See* 40 C.F.R. § 135.2(a)(3)(c) (notice of intent to file suit is deemed to have been served on the postmark date).

Notice of Violation and Intent to File Suit
June 2, 2022
Page 2 of 18

Riverkeeper intends to take legal action because Gentile Construction is discharging polluted stormwater from its waste material recycling and storage facility located at 451 Old Nepperhan Avenue, Yonkers, NY ("the Facility"), to the waters of the United States without a permit in violation of CWA Sections 301(a) and 402(p).[4]  Further, Gentile Construction has not applied for coverage under, nor complied with the conditions of, an individual National Pollutant Discharge Elimination System ("NPDES") permit or the Multi-Sector General Permit for the Discharge of Stormwater Associated with Industrial Activity ("General Permit")[5] issued by the New York State Department of Environmental Conservation ("DEC"), in violation of CWA Section 402(p), and 40 C.F.R. §§ 122.26(c)(1) and (e)(1).

## I.

## BACKGROUND

With every rainfall event, hundreds of millions of gallons of polluted rainwater pour into the Hudson River, the Saw Mill River, and other receiving waters.  The consensus among agencies and water quality specialists is that stormwater pollution accounts for more than half of the total pollution entering the marine environment each year.[6]

To protect the waters of the United States from such pollution, the CWA prohibits the discharge of pollutants from a "point source" into the waters of the United States without a National Pollutant Discharge Elimination System ("NPDES") permit.  NPDES permits are issued by the United States Environmental Protection Agency ("EPA") or by states that have been authorized by EPA to act as NPDES permitting authorities, provided that the state permitting program ensures compliance with the procedural and substantive requirements of the CWA.[7]  In New York, DEC has been authorized to issue NPDES permits.  As an authorized state NPDES permitting agency, DEC has elected to issue a statewide general permit for industrial stormwater discharges in New York.  The current version of the General Permit came into effect on March 1, 2018.  DEC also has the authority to issue SPDES permits for individual applicants.

DEC has designated more than 7,000 river miles, 319,000 acres of larger waterbodies, 940 square miles of bays and estuaries, and 592 miles of Great Lakes shoreline in the State as "impaired," or not meeting water quality standards, and unable to support beneficial uses such as fish habitat and water contact recreation.[8]  For the overwhelming majority of water bodies listed as impaired, stormwater runoff is cited as a primary source of the pollutants causing the

---

[4] 33 U.S.C. §§ 1311(a) and 1342(p)(2)(B).
[5] *SPDES Multi-Sector General Permit For Stormwater Discharges Associated With Industrial Activity*, Permit No. GP-0-17-004, N.Y. DEP'T ENVTL. CONSERVATION (Mar. 1, 2018) [hereinafter *General Permit*], https://www.dec.ny.gov/docs/water_pdf/msgp017004.pdf. This General Permit replaces earlier general permits for the discharge of stormwater associated with industrial activity and will expire on February 28, 2023.
[6] Stormwater is water from precipitation events that flows across the ground and pavement after it rains or after snow and ice melt.  *See* 40 C.F.R. § 122.26(b)(13).
[7] CWA § 402(b)(1), 33 U.S.C. § 1342(b)(1); 40 C.F.R. § 123.25(a).
[8] *New York Assessment Data*, U.S. ENVTL. PROT. AGENCY (2012), http://ofmpub.epa.gov/waters10/attains_state.report_control?p_state=NY&p_cycle=2012&p_report_type=A; *see also NYS Section 305(b) Water Quality Report*, N.Y. DEP'T ENVTL. CONSERVATION (2018), http://www.dec.ny.gov/chemical/66532.html

impairment.[9]  Contaminated stormwater discharges can and must be controlled in order to improve the quality and health of these waterbodies.

Stormwater discharges flow from the Facility to the Saw Mill River overland and through drains.  Given the Saw Mill River's position directly adjacent to the Facility, and the presence of storm drains at the Facility and on the public street adjacent, Riverkeeper believes stormwater reaches the Saw Mill River through both means.

The Saw Mill River flows into the Hudson River.  DEC has classified Saw Mill River, where the Facility discharges, as a Class C water.[10]  Under New York's Water Quality Standards, a waterbody that is designated as C is meant to be suitable for fishing and for fish, shellfish, and wildlife propagation and survival, as well as for potential use for primary and secondary contact recreation.[11]  The New York Water Quality Standards also set numeric and narrative criteria for different water pollution parameters including dissolved oxygen, oil and grease, suspended and settleable solids, bacteria (pathogens), pH, temperature, nutrients, and others.[12]  A waterbody must meet these numeric and narrative criteria in order to support its designated uses.

The Saw Mill River consistently fail to meet state water quality standards; illegal stormwater discharges from this Facility contribute to this failure.[13]  DEC has designated the Saw Mill River as impaired pursuant to CWA Section 303(d)[14] for failure to meet minimum water quality standards for a number of pollutants, including but not limited to phosphorous, low dissolved oxygen, and fecal coliform.[15]

While the Saw Mill River is a heavily developed waterway, its water quality should not be sacrificed.  At a minimum, Gentile Construction must stop illegally discharging polluted stormwater.

## II.

## STANDARDS AND LIMITATIONS ALLEGED TO HAVE BEEN VIOLATED AND ACTIVITIES ALLEGED TO BE VIOLATIONS

**A.     Gentile Construction is Discharging Stormwater Associated with Industrial Activity to Waters of the United States without a Permit.**

---

[9] *See generally NYS Section 305(b) Water Quality Report*, *Executive Summary*, at 6, https://www.dec.ny.gov/docs/water_pdf/section305b2018.pdf (identifying urban stormwater runoff as a top ten source of water quality impairment).
[10] 6 N.Y.C.R.R. § 859.4.
[11] 6 N.Y.C.R.R. § 701.8.
[12] *See generally* §§ 702, 703 (outlining quantitative and qualitative standards, respectively).
[13] *Section 303(d) List of Impaired Waters Requiring a TMDL/Other Strategy*, N.Y. DEP'T ENVTL. CONSERVATION, 6 (June 2020), https://www.dec.ny.gov/docs/water_pdf/section303d2018.pdf [hereinafter "*303(d) List*"].
[14] 33 U.S.C. § 1313(d).
[15] *303(d) List*, *supra* note 13, at 6.

Notice of Violation and Intent to File Suit
June 2, 2022
Page 4 of 18

The CWA prohibits the discharge of pollutants to the waters of the United States except in accordance with a valid NPDES permit.[16] Gentile Construction's industrial activity at the Facility has caused and continues to cause a "discharge of pollutants" within the meaning of CWA Section 502(12)[17] and a "stormwater discharge associated with industrial activity" within the meaning of 40 C.F.R. § 122.26(b)(14) from the Facility on at least each and every day that there has been a rain event of more than 0.1 inches.[18]

Gentile Construction's activities at the Facility include, but are not limited to, the processing of construction and demolition debris and materials recycling and the general storage of raw materials used in its offsite construction work. The Facility has exposed and continues to expose industrial pollutants to stormwater, at a minimum, by: (a) crushing, processing, recycling, and storing recycled construction and demolition waste and debris; (b) storing waste materials outdoors; (c) storing construction related raw materials outdoors; and (d) vehicles entering and leaving the Facility that track pollutants off site. During precipitation events (including runoff from rainfall and snow or ice melt events), pollutants are carried away from the Facility in stormwater discharges into the Saw Mill River, directly and/or through a municipal sewer drain.

In carrying out these activities at the Facility, Gentile Construction stores and handles materials in a manner that expose them to precipitation and snowmelt. In particular, moving, stockpiling, and processing construction and demolition debris often leads to the release of pollutants including sediment, metals, sand, dirt, and other waste materials. In addition to waste residues, vehicles and equipment also may release fuel, oil, lubricants, PCBs, PAHs, an array of metals, pH-affecting substances, and chemical residues. These toxic pollutants are often generated in the form of small particulate matter, which settles on the ground and other surfaces that are exposed to stormwater and non-stormwater flows.

Trucks and other vehicles driving on and off the property are point sources of pollution. The Facility uses heavy vehicles and stores machinery outdoors. Besides the wastes they carry, vehicles and industrial equipment at the Facility may expose many other pollutants to the elements, including gasoline, diesel fuel, anti-freeze, and hydraulic fluids. Gentile Construction's trucks constitute point sources of water pollution in and of themselves.

Because Gentile Construction fails to adequately shelter and otherwise contain these materials to prevent their release to the environment, precipitation falls on and flows over exposed materials, fluids, and particulates. Polluted stormwater discharges flow from the Facility to the Saw Mill River.

The Saw Mill River is a "water of the United States," as defined in 40 C.F.R. § 122.2 and, therefore, "navigable water" as defined in CWA Section 502(7). Gentile Construction does not have a NPDES permit for these discharges of pollutants. Thus, Gentile Construction is

---

[16] CWA §§ 301(a), 402.
[17] 33 U.S.C. § 1362(12).
[18] EPA has determined that precipitation greater than 0.1 inches in a 24-hour period constitutes a measurable precipitation event for the purposes of evaluating stormwater runoff associated with industrial activity. *See, e.g.*, 40 C.F.R. § 122.26(c)(i)(E)(6) (using 0.1 inches as the distinguishing threshold of a storm event).

Notice of Violation and Intent to File Suit
June 2, 2022
Page 5 of 18

discharging polluted industrial stormwater into navigable waters of the United States without the permit required under CWA Sections 301 and 402.

**B.**     **Gentile Construction is Failing to Apply for NPDES Permit Coverage.**

At the Facility, Gentile Construction is engaged in recycling and processing construction and demolition waste and also storing both construction waste and raw materials. Gentile Construction is therefore engaged in waste recycling, an activity classified under Standard Industrial Classification ("SIC") Code 5093 which is an industrial activity included in Sector N of the General Permit. Gentile is also engaged in storage and warehousing of supplies for construction activities, an activity classified under SIC Code 4225, which is also a type of industrial activity within the meaning of the Clean Water Act. Pursuant to CWA Section 402(p) and the regulations promulgated by EPA pursuant to the CWA, Gentile Construction must apply for coverage under the General Permit or an individual NPDES permit for Gentile Construction's discharge of polluted stormwater. In addition, Gentile Construction must apply for an individual NPDES permit if the Facility is discharging process wastewater, or has any other non-stormwater discharge containing pollutants, that is not authorized by the General Permit. By failing to apply for coverage under the General Permit or an individual permit, Gentile Construction is violating CWA Sections 301(a), 402(a) and 402(p) and 40 C.F.R. §§ 122.26(c)(1) and (e)(1).[19]

To be eligible to discharge stormwater associated with its industrial activities under the General Permit, Gentile Construction must submit to DEC a registration form called a "Notice of Intent."[20] To register, Gentile Construction is required, among other things, to list all stormwater discharges, to describe each of the industrial activities taking place in the drainage area of each discharge and the acreage of industrial activity exposed to stormwater, the immediate surface water body or wetland to which site runoff discharges, and the name of the watershed and nearest waterbody to which the site ultimately discharges and information about whether the receiving waters are impaired. Gentile Construction has failed to prepare and file a Notice of Intent or an application for an individual permit.

**C.**     **Gentile Construction is Failing to Comply with the General Permit.**

As a discharger of stormwater associated with industrial activity, Gentile Construction must comply at all times with the requirements of the General Permit (or an individual permit). By discharging stormwater associated with industrial activity without complying with the

---

[19] Sections 301(a) and 402(a) and (p) make it unlawful for Gentile Construction to discharge stormwater associated with industrial activity without obtaining a NPDES permit. 40 C.F.R. Sections 122.26(c)(1) and (e)(1) require Gentile Construction to apply for a NPDES permit that covers Gentile Construction' discharge of stormwater associated with industrial activity.

[20] *General Permit*, *supra* note 5, Part I.D.1.a.2. In notifying Gentile Construction that they are in violation of the General Permit, Riverkeeper does not concede that all of the activities conducted at the Facility are necessarily eligible for coverage under that permit. For example, if a Facility is discharging process wastewater, such as wash water, or has any other polluted non-stormwater discharge that is not authorized by the General Permit, then an individual NPDES permit is required and the failure to obtain and comply with an individual NPDES permit for such discharges also violates CWA §§ 301(a) and 402(p). The conditions for eligibility to discharge under the General Permit are provided at Part I.B of the permit.

Notice of Violation and Intent to File Suit
June 2, 2022
Page 6 of 18

General Permit, Gentile Construction is violating CWA Sections 301(a) and 402(a) and (p).[21] The following summarizes the main General Permit requirements that Gentile Construction has failed and continue to fail to meet.

> **1. Gentile Construction has not developed and implemented a Stormwater Pollution Prevention Plan.**

Before submitting a registration form, Gentile Construction must prepare, make available, and implement a Stormwater Pollution Prevention Plan ("SWPPP") in accordance with schedules established in the General Permit.[22] The SWPPP must identify potential sources of pollution that may affect the quality of stormwater discharges associated with industrial activity. Further, the SWPPP must describe and ensure the implementation of practices that minimize the discharge of pollutants in these discharges and that assure compliance with the other terms and conditions of the General Permit, including achievement of effluent limitations.[23]

Among other things, the SWPPP must include: a general site description; a general location map identifying the location of the facility and all receiving waters to which stormwater discharges; information related to a company stormwater pollution prevention team; a summary of potential pollutant sources; a description of control measures and best management practices; and schedules and procedures for implementation of control measures, monitoring, and inspections.[24]

Gentile Construction has not developed and implemented a legally compliant SWPPP for the Facility, as required by Part III of the General Permit.[25]

> **2. Gentile Construction has not implemented control measures and Best Management Practices that meet the best available technology standards.**

Gentile Construction cannot legally discharge stormwater under the General Permit from the Facility until Gentile Construction implements mandatory general and sector-specific control measures called Best Management Practices ("BMPs") in order to minimize the discharge of pollutants from the Facility.[26] The selected measures must reduce the discharge of pollution from each Facility to the extent practicable through use of the best available technology for the industry.

The General Permit requires that the owner or operator must select, design, install, and implement control measures (including best management practices), in accordance with good

---

[21] Sections 301(a) and 402(a) and (p) make it unlawful for Gentile Construction to discharge stormwater associated with industrial activity without first complying with all of the conditions established in a NPDES permit.
[22] *General Permit*, *supra* note 5, Part III.C.
[23] *Id.*, Part III.A.
[24] *Id.*
[25] Riverkeeper believes no SWPPPs exist for the Facility. If a SWPPP exists at the Facility, then it is either facially inadequate or has not been fully and adequately implemented.
[26] *General Permit*, *supra* note 5, Part II.D; *see also id.*, Part VII (setting forth sector-specific control measures and practices).

engineering practices, to meet the effluent limits contained in the permit.[27] The General Permit's effluent limits include both limits specific to certain sectors[28] and limits that apply to all facilities.[29] These restrictions include minimizing the exposure of pollutants to stormwater and minimizing the discharge of pollutants in stormwater to the extent achievable using control measures (including best management practices) that are technologically available, economically practicable, and achievable in light of best industry practice.[30]

Gentile Construction has not minimized the exposure of pollutants or the discharge of pollution to the extent achievable by implementing control measures or BMPs that are technologically achievable and economically practicable and achievable in light of best industry practice, as required by Parts II and VII of the General Permit.

> **3.   Gentile Construction has not conducted routine site inspections and complied with monitoring, recordkeeping, and reporting requirements.**

Gentile Construction must conduct an annual comprehensive site inspection and evaluation of areas where industrial materials or activities are exposed to precipitation or where spills and leaks have occurred within the past three years.[31] The inspection must ensure that all stormwater discharges are adequately controlled and that all BMPs are functioning as expected.[32] Records of this inspection must be kept for five years.[33]

In addition, qualified facility personnel must carry out routine inspections at least quarterly.[34] During these inspections, personnel must evaluate conditions and maintenance needs of stormwater management devices, detect leaks and ensure the good condition of containers, evaluate the performance of the existing stormwater BMPs described in the SWPPP, and document any deficiencies in the implementation and/or adequacy of the SWPPP.[35] Such deficiencies must then be addressed through corrective actions.[36]

The General Permit requires that all covered facilities conduct multiple types of analytical monitoring, and DEC may require additional individualized monitoring as well.[37] In particular, all facilities authorized under the General Permit must, at minimum:

---

[27] *General Permit*, *supra* note 5, Part II; *see also id.*, Part III.A.7 ("The SWPPP must document in writing the location and type of BMPs installed and implemented at the facility to achieve the non-numeric effluent limits in Part II.A. and where applicable in Part VII, and the sector specific numeric effluent limitations in Part VII.").
[28] *See generally id.*, Part VII (laying out sector-specific requirements).
[29] *Id.*, Part II.
[30] *Id.* ("Effluent limits are required to minimize the discharge of pollutants. The term 'minimize' means reduce and/or eliminate to the extent achievable using control measures (including Best Management Practices . . .) that are technologically available and economically practicable and achievable in light of best industry practice.").
[31] *Id.,* Part IV.A.1.
[32] *Id.*
[33] *Id.*, Part IV.A.2.
[34] *Id.*, Part IV.B.
[35] *Id.*
[36] *Id*., Part V.
[37] *General Permit*, *supra* note 5, Part IV.F.1, 2.

Notice of Violation and Intent to File Suit
June 2, 2022
Page 8 of 18

- conduct visual monitoring of stormwater discharges at least quarterly;[38]
- collect and analyze stormwater samples for each outfall at least semi-annually;[39]
- perform an annual dry weather inspection to detect non-stormwater discharges;[40]
- inspect, sample, and monitor discharges from secondary containment structures and transfer areas;[41]
- document storm events during which any samples are taken;[42]
- document all of these monitoring activities;[43]
- keep records of the monitoring with the Facility's SWPPP;[44] and
- submit an annual report to DEC accompanied by a Discharge Monitoring Report detailing the results of all required stormwater samples, as well as reports that document any instance of non-compliance with benchmarks or numeric effluent limitations.[45]

Furthermore, because Gentile Construction engages in industrial activities associated with Sector N, sampling may be required for:

- Total Suspended Solids;
- Chemical Oxygen Demand;
- Oil and Grease;
- Aluminum;
- Cadmium;
- Chromium;
- Copper;
- Iron;
- Lead; and
- Zinc.[46]

Although most sampling is required biannually, because the Saw Mill River is impaired for low dissolved oxygen, Gentile Construction must sample for Chemical Oxygen Demand on a quarterly basis.[47]

Riverkeeper is not necessarily aware of all industrial activities taking place at the Facility. To the extent that industrial activities other than the above are carried out at the Facility, other sampling may be required as well.[48] This notice provides Gentile Construction with sufficient

---

[38] *Id.*, Part IV.E.
[39] *Id.*, Part IV.F.2.
[40] *Id.*, Part IV.C.
[41] *Id.*, Part IV.F.1.e.
[42] *Id.*, Part IV.D.3.
[43] *Id.*, Parts IV, VI.
[44] *Id.*, Part IV.A.2.
[45] *Id.*, Part VI.A.
[46] *Id.*, Part VII.N.
[47] *Id.*, Parts IV.F.1c, IV. F2.
[48] *See generally General Permit*, *supra* note 5, Part VII (outlining sector-specific requirements).

Notice of Violation and Intent to File Suit
June 2, 2022
Page 9 of 18

information to identify the standards and limitations that apply to all categories of industrial activity.

Gentile Construction has failed at the Facility to conduct the required annual and other routine inspections, monitoring, and testing, as required by, at least, Parts IV, VI, and VII of the General Permit.  Gentile Construction has also failed to retain records and submit monitoring reports to DEC pertaining to the Facility, as required by, at least, Parts IV, VI, and VII of the General Permit.

    **4.**    **Gentile Construction has failed to comply with additional requirements located in Part VII of the General Permit.**

As noted above, the General Permit contains various requirements specific to Sector N.  These requirements are collected in Part VII of the General Permit.  Gentile Construction has failed to comply with these additional requirements of Part VII of the General Permit.

In sum, Gentile Construction's discharge of stormwater associated with industrial activities without a permit, Gentile Construction's failure to apply for permit coverage, and Gentile Construction's failure to comply with the above-listed conditions of the General Permit (or an individual NPDES permit) constitute violations of the General Permit and of Sections 301(a) and 402(p) of the Clean Water Act.

### III.

### PERSONS RESPONSIBLE FOR ALLEGED VIOLATIONS

Gentile Construction Corp., All About Recycling, Inc., and Joseph Gentile Jr. ("Gentile Construction") are responsible for the violations alleged in this Notice.  Gentile Construction has operational control over the day-to-day industrial activities at this Facility.  Therefore Gentile Construction is responsible for managing stormwater at the Facility in compliance with the CWA.  Riverkeeper hereby puts Gentile Construction on notice that if Riverkeeper subsequently identifies additional persons as also being responsible for the violations set forth above, Riverkeeper intends to include those persons in this action.

### IV.

### LOCATION OF THE ALLEGED VIOLATION

The violations alleged in this Notice have occurred and continue to occur at the Facility located at 451 Old Nepperhan Ave Yonkers, NY 10703.  Stormwater associated with industrial activity discharges directly adjacent and thus into the Saw Mill River.  The failure to develop and

Notice of Violation and Intent to File Suit
June 2, 2022
Page 10 of 18

implement pollution prevention plans and take the other required measures are violations occurring at the Facility in general and in the inadequate documents themselves.[49]

## V.

## **DATES OF VIOLATION**

Every day upon which Gentile Construction has failed to apply for permit coverage since Gentile Construction first commenced operations at the Facility and discharged polluted stormwater is a separate violation of CWA Section 301(a) and EPA's regulations implementing the CWA.[50]

Additionally, Gentile Construction has discharged pollution without a permit in violation of Section 301(a) of the CWA on every day since Gentile Construction commenced operations at the Facility on which there has been a measurable precipitation event or discharge of previously accumulated precipitation (i.e., snowmelt) over 0.1 inches.

Appendix A sets forth specific rain dates on which Riverkeeper alleges that the Facility discharged storm water in violation of Section 301(a) of the Clean Water and of the General Permit. The second column shows precipitation. Riverkeeper alleges that the Facility discharged stormwater on each day of these events, as either 0.1 inch of rain or 1.0 inch of snow (shown here in water-equivalent inches) fell on these days. This list of dates is not exclusive, and Riverkeeper hereby notifies Gentile Construction that Riverkeeper intends to take legal action regarding any other days on which Riverkeeper later learns that Gentile Construction discharged pollutants from the Facility. In sum, Riverkeeper alleges that the Facility discharged stormwater on 419 days.

Finally, if Gentile Construction seeks permit coverage after receiving this letter but fails to fully comply with the requirements of the General Permit (or an individual permit), each day upon which Gentile Construction claims coverage under a NPDES permit but fails to comply with that permit will constitute a separate day of violation with respect to each unmet condition of that permit.

Gentile Construction is liable for the above-described violations occurring prior to the date of this letter, and for every day after the date of this letter that these violations continue. In addition to the violations set forth above, this Notice covers all violations of the CWA evidenced by information that becomes available to Riverkeeper after the date of this Notice of Intent to

---

[49] The federal courts have held that a reasonably specific indication of the area where violations occurred, such as the name of the facility, is sufficient and that more precise locations need not be included in the notice. *See, e.g.*, *NRDC v. Sw. Marine, Inc.,* 945 F. Supp. 1330, 1333 (S.D. Cal. 1996), *aff'd* 236 F.3d 985, 996 (9th Cir. 2000); *City of New York v. Anglebrook Ltd. P'ship*, 891 F. Supp. 900, 908 (S.D.N.Y. 1995); *United Anglers v. Kaiser Sand & Gravel Co.*, No. C 95-2066 CW, 1995 U.S. Dist. LEXIS 22449 at *4 (N.D. Cal. Sept. 27, 1995).
[50] *See also* 33 U.S.C. §§ 402(p)(3)(A) and (p)(4)(A) (requiring the establishment of industrial stormwater NPDES permits and of a permit application process).

File Suit.[51] These violations are ongoing and, barring full compliance with the permitting requirements of the Clean Water Act, these violations will continue.

## VI.

## **RELIEF REQUESTED**

Riverkeeper will ask the court to order Gentile Construction to comply with the CWA, to pay penalties, and to pay Riverkeeper's costs and legal fees.

First, Riverkeeper will seek declaratory relief and injunctive relief to prevent further violations of the Clean Water Act pursuant to Sections 505(a) and (d) and such other relief as permitted by law. Riverkeeper will seek an order from the Court requiring Gentile Construction to obtain NPDES permit coverage and to correct all other identified violations through direct implementation of control measures and demonstration of full regulatory compliance.

Second, pursuant to CWA Section 309(d),[52] each separate violation of the CWA subjects Gentile Construction to a penalty not to exceed not to exceed $59,973 per day.[53] Riverkeeper will seek the full penalties allowed by law.

Third, pursuant to CWA Section 505(d), Riverkeeper will seek recovery of its litigation fees and costs (including reasonable attorney and expert witness fees) associated with this matter.[54]

## VII.

## **PERSONS GIVING NOTICE**

The full name, address, and telephone number of the persons giving notice are as follows:

Riverkeeper, Inc.
20 Secor Road
Ossining, NY 10562
(914) 478-4501
Attn: Victoria Leung

---

[51] *See, e.g. Pub. Interest Research Grp. v. Hercules, Inc.*, 50 F.3d 1239, 1248-49 (3d Cir. 1995) (a notice that adequately identifies specific violations to a potential defendant also covers repeated and related violations that the plaintiff learns of later. "For example, if a permit holder has discharged pollutant 'x' in excess of the permitted effluent limit five times in a month but the citizen has learned only of four violations, the citizen will give notice of the four violations of which the citizen then has knowledge but should be able to include the fifth violation in the suit when it is discovered.")
[52] 33 U.S.C. § 1319(d); *see also* 40 C.F.R. § 19.4 (Adjustment of Civil Monetary Penalties for Inflation).
[53] 40 C.F.R. §§ 19.2 and 19.4.
[54] 33 U.S.C. § 1365(d).

# VIII.

# IDENTIFICATION OF COUNSEL

Riverkeeper is represented by legal counsel in this matter. The name, address, and telephone number of Riverkeeper's attorneys are:

Edan Rotenberg, Esq.
Benjamin Pierce, Esq.
Super Law Group, LLC
110 Wall Street
New York, New York 10005
(212) 242-2355

# IX.

# CONCLUSION

The foregoing provides more than sufficient information to permit Gentile Construction to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.[55]

If Gentile Construction has developed a SWPPP, Riverkeeper requests that Gentile Construction send a copy to the undersigned attorney.[56] Otherwise, Riverkeeper encourages Gentile Construction to begin developing a SWPPP immediately after receiving this letter and asks that Gentile Construction please inform the undersigned attorney of Gentile Construction's efforts so Riverkeeper can work with Gentile Construction to avoid disputes over the contents of the SWPPP.[57]

---

[55] 40 C.F.R. § 135.3(a).

[56] Note that under Part III.C.2 of the General Permit, the owner or operator of a facility "must make a copy of the SWPPP available to the public within 14 days of receipt of a written request." If Gentile Construction prefers to make a copy of the SWPPP available in another way, please contact the undersigned attorney to explain.

[57] Riverkeeper will not send a new notice letter in response to any effort Gentile Construction make to come into compliance with the Clean Water Act after receiving this letter, for example, by developing a SWPPP. The federal courts have held that citizens sending a notice letter are not required to identify inadequacies in compliance documents that do not yet exist and are "not required to send a second notice letter in order to pursue specific claims regarding the inadequacies of [a defendant's] post-notice compliance efforts." *WaterKeepers N. Cal. v. AG Indus. Mfg.*, 375 F.3d 913, 920 (9th Cir. 2004). *See also Sw. Marine, Inc.*, 236 F.3d at 997 (9th Cir. 2000) ("subject matter jurisdiction is established by providing a notice that is adequate on the date it is given to the defendant. The defendant's later changes . . . do not retroactively divest a district court of jurisdiction under 33 U.S.C. § 1365(b)."); *Anglebrook Ltd. P'ship*, 891 F. Supp. at 908 (S.D.N.Y. 1995) (plaintiff's notice letter based on inadequacies of defendant's original SWPPP held sufficient to establish court's jurisdiction, even though defendant later prepared a revised SWPPP).

Notice of Violation and Intent to File Suit
June 2, 2022
Page 13 of 18

During the sixty-day notice period, Riverkeeper is willing to discuss effective remedies for the violations noted in this letter that may avoid the necessity of protracted litigation. If Gentile Construction wishes to pursue such discussions, please contact the undersigned attorney immediately so that negotiations may be completed before the end of the sixty-day notice period. We do not intend to delay the filing of a complaint in federal court, regardless of whether discussions are continuing at the conclusion of the sixty days.

        Sincerely,

        Benjamin Pierce
        Edan Rotenberg
        Super Law Group, LLC
        110 Wall Street
        New York, New York 10005
        (212) 242-2355, ext. 4
        ben@superlawgroup.com

        *Attorneys for Riverkeeper, Inc.*

cc:

Michael Regan, Administrator
Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Lisa F. Garcia, EPA Region 2 Administrator
Environmental Protection Agency
290 Broadway
New York, NY 10007-1866

Basil Seggos, Commissioner
New York State Department of Environmental Conservation
625 Broadway
Albany, NY 12233-1011

# Appendix A:
## NOAA Precipitation Data, June 4, 2017 through May 22, 2022[58]

| Date | Precip. |
|---|---|
| 6/4/17 | 0.2 |
| 6/6/17 | 0.1 |
| 6/16/17 | 0.28 |
| 6/17/17 | 0.15 |
| 6/19/17 | 0.95 |
| 6/24/17 | 0.73 |
| 6/27/17 | 0.16 |
| 7/1/17 | 0.15 |
| 7/7/17 | 1.13 |
| 7/11/17 | 0.23 |
| 7/13/17 | 0.63 |
| 7/14/17 | 0.57 |
| 7/24/17 | 0.55 |
| 7/29/17 | 0.15 |
| 8/2/17 | 0.19 |
| 8/5/17 | 0.43 |
| 8/7/17 | 0.45 |
| 8/12/17 | 0.47 |
| 8/18/17 | 0.58 |
| 8/22/17 | 0.24 |
| 9/2/17 | 0.35 |
| 9/3/17 | 0.92 |
| 9/6/17 | 0.53 |
| 9/14/17 | 0.2 |
| 9/19/17 | 0.1 |
| 10/8/17 | 0.12 |
| 10/9/17 | 0.29 |
| 10/24/17 | 0.18 |
| 10/29/17 | 3.75 |
| 10/30/17 | 0.38 |
| 11/7/17 | 0.57 |
| 11/16/17 | 0.29 |
| 11/18/17 | 0.17 |
| 11/19/17 | 0.15 |
| 12/5/17 | 0.46 |
| 12/9/17 | 0.18 |
| 12/23/17 | 0.47 |
| 12/25/17 | 0.15 |
| 1/12/18 | 0.65 |
| 1/13/18 | 0.17 |
| 1/17/18 | 0.13 |
| 1/23/18 | 0.29 |
| 1/28/18 | 0.18 |
| 2/2/18 | 0.13 |
| 2/4/18 | 0.98 |
| 2/7/18 | 0.6 |
| 2/10/18 | 0.61 |
| 2/11/18 | 0.92 |
| 2/15/18 | 0.13 |
| 2/16/18 | 0.16 |
| 2/17/18 | 0.61 |
| 2/22/18 | 0.23 |
| 2/23/18 | 0.12 |
| 2/25/18 | 0.63 |
| 3/1/18 | 0.22 |
| 3/2/18 | 1.75 |
| 3/7/18 | 0.33 |
| 3/21/18 | 0.17 |
| 4/2/18 | 0.46 |
| 4/3/18 | 0.34 |
| 4/15/18 | 0.32 |
| 4/16/18 | 2.44 |
| 4/19/18 | 0.36 |
| 4/25/18 | 0.58 |
| 4/29/18 | 0.12 |
| 5/3/18 | 0.31 |
| 5/10/18 | 0.34 |
| 5/12/18 | 0.15 |
| 5/13/18 | 0.1 |
| 5/15/18 | 0.41 |
| 5/16/18 | 0.7 |

---

[58] The rain dates in the table are all the days when 0.1 inch or more rain was observed at the nearest weather station to the Facility. Rain data was accessed from the National Oceanic and Atmospheric Administration. *Climate Data Online Search*, NAT'L OCEANIC & ATMOSPHERIC ADMIN., https://www.ncdc.noaa.gov/cdo-web/search (last visited June 1, 2022).

Notice of Violation and Intent to File Suit
June 2, 2022
Page 15 of 18

| Date | Value | Date | Value | Date | Value |
|---|---|---|---|---|---|
| 5/17/18 | 0.22 | 8/22/18 | 0.4 | 12/21/18 | 2.53 |
| 5/19/18 | 0.53 | 8/31/18 | 0.1 | 12/28/18 | 0.83 |
| 5/22/18 | 0.25 | 9/6/18 | 1.4 | 12/31/18 | 0.96 |
| 5/23/18 | 0.1 | 9/9/18 | 0.2 | 1/1/19 | 0.12 |
| 6/4/18 | 0.35 | 9/10/18 | 1.45 | 1/5/19 | 0.77 |
| 6/5/18 | 0.13 | 9/12/18 | 0.14 | 1/8/19 | 0.17 |
| 6/21/18 | 0.35 | 9/18/18 | 0.53 | 1/19/19 | 0.21 |
| 6/24/18 | 0.54 | 9/25/18 | 4.41 | 1/20/19 | 1.02 |
| 6/28/18 | 1.83 | 9/26/18 | 0.25 | 1/24/19 | 1.68 |
| 7/6/18 | 0.15 | 9/28/18 | 0.59 | 1/29/19 | 0.37 |
| 7/14/18 | 0.38 | 10/2/18 | 2.26 | 2/6/19 | 0.36 |
| 7/15/18 | 0.12 | 10/11/18 | 0.84 | 2/8/19 | 0.21 |
| 7/17/18 | 0.74 | 10/12/18 | 0.27 | 2/12/19 | 0.6 |
| 7/21/18 | 0.2 | 10/15/18 | 0.14 | 2/20/19 | 0.52 |
| 7/22/18 | 1.42 | 10/27/18 | 0.57 | 2/24/19 | 0.56 |
| 7/23/18 | 0.17 | 11/2/18 | 0.36 | 3/2/19 | 0.24 |
| 7/25/18 | 0.54 | 11/3/18 | 0.35 | 3/3/19 | 0.5 |
| 7/27/18 | 0.42 | 11/5/18 | 0.22 | 3/4/19 | 0.2 |
| 8/1/18 | 0.17 | 11/6/18 | 0.61 | 3/10/19 | 0.48 |
| 8/2/18 | 0.14 | 11/9/18 | 0.81 | 3/15/19 | 0.36 |
| 8/4/18 | 0.61 | 11/13/18 | 0.96 | 3/21/19 | 0.35 |
| 8/7/18 | 0.67 | 11/15/18 | 0.66 | 3/22/19 | 0.49 |
| 8/9/18 | 0.15 | 11/16/18 | 0.11 | 3/31/19 | 0.13 |
| 8/11/18 | 2.94 | 11/24/18 | 0.77 | 4/5/19 | 0.17 |
| 8/12/18 | 0.1 | 11/25/18 | 0.29 | 4/8/19 | 0.18 |
| 8/13/18 | 0.65 | 11/26/18 | 0.88 | 4/12/19 | 0.56 |
| 8/14/18 | 0.1 | 12/2/18 | 0.66 | 4/13/19 | 0.26 |
| 8/17/18 | 1.29 | 12/15/18 | 0.12 | 4/15/19 | 0.72 |
| 8/18/18 | 0.34 | 12/16/18 | 1.04 | 4/19/19 | 0.12 |
| 8/19/18 | 0.17 | 12/20/18 | 0.14 | 4/20/19 | 0.76 |

| Date | Value | Date | Value | Date | Value |
|---|---|---|---|---|---|
| 4/22/19 | 0.23 | 7/22/19 | 1.05 | 11/24/19 | 0.73 |
| 4/26/19 | 1.17 | 7/23/19 | 0.95 | 12/1/19 | 0.58 |
| 4/27/19 | 0.18 | 7/31/19 | 0.73 | 12/2/19 | 0.16 |
| 4/30/19 | 0.17 | 8/3/19 | 0.69 | 12/9/19 | 1.25 |
| 5/2/19 | 0.17 | 8/4/19 | 0.3 | 12/10/19 | 0.14 |
| 5/4/19 | 0.43 | 8/7/19 | 0.35 | 12/11/19 | 0.25 |
| 5/5/19 | 1.11 | 8/14/19 | 0.26 | 12/13/19 | 0.87 |
| 5/12/19 | 1.32 | 8/21/19 | 0.1 | 12/14/19 | 1.06 |
| 5/13/19 | 0.56 | 8/22/19 | 0.45 | 12/17/19 | 0.5 |
| 5/14/19 | 0.16 | 8/23/19 | 0.21 | 12/29/19 | 0.3 |
| 5/19/19 | 0.19 | 8/28/19 | 0.18 | 12/30/19 | 0.53 |
| 5/20/19 | 0.25 | 9/2/19 | 0.13 | 1/3/20 | 0.11 |
| 5/23/19 | 0.28 | 9/7/19 | 0.12 | 1/4/20 | 0.14 |
| 5/28/19 | 0.13 | 9/23/19 | 0.14 | 1/16/20 | 0.11 |
| 5/29/19 | 0.82 | 9/26/19 | 0.18 | 1/18/20 | 0.34 |
| 5/30/19 | 1.26 | 10/2/19 | 0.18 | 1/25/20 | 1.2 |
| 6/2/19 | 0.12 | 10/3/19 | 0.48 | 2/6/20 | 0.31 |
| 6/10/19 | 0.42 | 10/7/19 | 0.42 | 2/7/20 | 0.34 |
| 6/11/19 | 0.21 | 10/9/19 | 0.36 | 2/10/20 | 0.27 |
| 6/13/19 | 0.59 | 10/16/19 | 2.56 | 2/11/20 | 0.29 |
| 6/16/19 | 0.14 | 10/20/19 | 0.4 | 2/13/20 | 0.49 |
| 6/18/19 | 0.69 | 10/22/19 | 0.5 | 2/27/20 | 0.53 |
| 6/21/19 | 0.13 | 10/23/19 | 0.15 | 3/3/20 | 0.28 |
| 6/25/19 | 0.28 | 10/27/19 | 2.2 | 3/6/20 | 0.1 |
| 6/30/19 | 0.12 | 10/30/19 | 0.13 | 3/13/20 | 0.34 |
| 7/6/19 | 0.95 | 10/31/19 | 0.76 | 3/17/20 | 0.11 |
| 7/8/19 | 0.1 | 11/1/19 | 0.12 | 3/19/20 | 0.7 |
| 7/11/19 | 1.25 | 11/7/19 | 0.12 | 3/23/20 | 0.79 |
| 7/17/19 | 0.85 | 11/18/19 | 0.41 | 3/28/20 | 0.27 |
| 7/18/19 | 1.65 | 11/19/19 | 0.38 | 3/29/20 | 0.36 |

| | | | | | |
|---|---|---|---|---|---|
| 4/8/20 | 0.12 | 8/19/20 | 0.12 | 1/15/21 | 0.36 |
| 4/9/20 | 0.26 | 8/27/20 | 0.35 | 1/16/21 | 0.63 |
| 4/13/20 | 2.58 | 8/28/20 | 0.18 | 1/26/21 | 0.12 |
| 4/18/20 | 0.33 | 8/29/20 | 0.1 | 2/1/21 | 0.26 |
| 4/21/20 | 0.23 | 9/1/20 | 0.37 | 2/7/21 | 0.15 |
| 4/24/20 | 0.44 | 9/2/20 | 0.17 | 2/16/21 | 0.68 |
| 4/26/20 | 0.21 | 9/3/20 | 0.79 | 2/18/21 | 0.3 |
| 4/30/20 | 0.84 | 9/10/20 | 0.46 | 2/22/21 | 0.4 |
| 5/1/20 | 0.2 | 9/28/20 | 0.1 | 2/27/21 | 0.35 |
| 5/3/20 | 0.13 | 9/29/20 | 0.58 | 2/28/21 | 0.15 |
| 5/8/20 | 0.53 | 9/30/20 | 0.97 | 3/1/21 | 0.14 |
| 5/15/20 | 0.25 | 10/2/20 | 0.1 | 3/18/21 | 0.66 |
| 5/23/20 | 0.54 | 10/12/20 | 0.52 | 3/24/21 | 0.53 |
| 6/3/20 | 0.55 | 10/16/20 | 1.26 | 3/28/21 | 0.82 |
| 6/5/20 | 0.51 | 10/28/20 | 0.27 | 3/31/21 | 0.38 |
| 6/11/20 | 0.12 | 10/29/20 | 1.36 | 4/11/21 | 0.49 |
| 6/28/20 | 0.55 | 10/30/20 | 0.49 | 4/12/21 | 0.24 |
| 7/1/20 | 0.39 | 11/1/20 | 0.47 | 4/15/21 | 1.05 |
| 7/3/20 | 0.75 | 11/11/20 | 1.07 | 4/21/21 | 0.39 |
| 7/8/20 | 0.38 | 11/12/20 | 0.15 | 4/25/21 | 0.51 |
| 7/10/20 | 1.22 | 11/13/20 | 0.1 | 4/28/21 | 0.11 |
| 7/17/20 | 1.15 | 11/15/20 | 0.25 | 5/3/21 | 0.53 |
| 7/22/20 | 0.6 | 11/23/20 | 0.43 | 5/4/21 | 0.54 |
| 7/31/20 | 1.05 | 11/26/20 | 0.66 | 5/5/21 | 0.29 |
| 8/3/20 | 0.38 | 11/30/20 | 1.31 | 5/9/21 | 0.64 |
| 8/4/20 | 0.72 | 12/5/20 | 0.89 | 5/26/21 | 0.27 |
| 8/7/20 | 0.11 | 12/14/20 | 0.11 | 5/28/21 | 1.21 |
| 8/16/20 | 0.26 | 12/16/20 | 0.25 | 5/29/21 | 0.42 |
| 8/17/20 | 0.86 | 12/31/20 | 0.33 | 5/30/21 | 0.84 |
| 8/18/20 | 0.14 | 1/1/21 | 0.34 | 6/3/21 | 0.46 |

Notice of Violation and Intent to File Suit
June 2, 2022
Page 18 of 18

| Date | Value | Date | Value | Date | Value |
|---|---|---|---|---|---|
| 6/4/21 | 0.1 | 10/4/21 | 0.54 | 3/6/22 | 0.13 |
| 6/7/21 | 0.4 | 10/10/21 | 0.13 | 3/9/22 | 0.39 |
| 6/8/21 | 1.55 | 10/16/21 | 0.23 | 3/12/22 | 0.21 |
| 6/14/21 | 0.24 | 10/25/21 | 0.44 | 3/17/22 | 0.17 |
| 6/19/21 | 0.87 | 10/26/21 | 3.91 | 3/19/22 | 0.14 |
| 6/22/21 | 0.29 | 10/29/21 | 0.54 | 3/23/22 | 0.12 |
| 7/1/21 | 0.71 | 10/30/21 | 0.11 | 3/24/22 | 0.59 |
| 7/2/21 | 1.17 | 11/12/21 | 0.51 | 3/31/22 | 0.16 |
| 7/3/21 | 0.1 | 11/13/21 | 0.37 | 4/1/22 | 0.35 |
| 7/6/21 | 0.77 | 11/26/21 | 0.11 | 4/3/22 | 0.1 |
| 7/8/21 | 1.42 | 12/6/21 | 0.3 | 4/6/22 | 0.28 |
| 7/9/21 | 0.25 | 12/11/21 | 0.18 | 4/7/22 | 3.04 |
| 8/8/21 | 0.16 | 12/22/21 | 0.13 | 4/8/22 | 0.16 |
| 8/11/21 | 0.54 | 12/25/21 | 0.2 | 4/9/22 | 0.13 |
| 8/19/21 | 0.31 | 1/1/22 | 0.47 | 4/14/22 | 0.13 |
| 8/22/21 | 2.38 | 1/5/22 | 0.19 | 4/16/22 | 0.21 |
| 8/23/21 | 0.97 | 1/7/22 | 0.18 | 4/18/22 | 0.61 |
| 9/1/21 | 6.06 | 1/16/22 | 0.16 | 4/19/22 | 0.78 |
| 9/2/21 | 0.1 | 1/17/22 | 1.24 | 5/2/22 | 0.15 |
| 9/5/21 | 0.14 | 1/20/22 | 0.22 | 5/6/22 | 0.57 |
| 9/9/21 | 0.56 | 2/3/22 | 0.53 | 5/7/22 | 0.52 |
| 9/16/21 | 0.11 | 2/4/22 | 0.52 | 5/14/22 | 0.17 |
| 9/17/21 | 0.13 | 2/17/22 | 0.23 | 5/16/22 | 0.12 |
| 9/23/21 | 0.52 | 2/18/22 | 0.29 | 5/19/22 | 0.51 |
| 9/24/21 | 0.59 | 2/22/22 | 0.26 | 5/20/22 | 0.18 |
| 9/28/21 | 0.1 | 2/25/22 | 0.52 | 5/22/22 | 0.23 |